UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
STEVEN SPAVONE,

                         Plaintiff,           NOT FOR PUBLICATION

                           v.                   **MEMORANDUM & ORDER**
                                                                 16-CV-1219 (MKB)

TRANSITIONAL SERVICES OF NEW YORK
SUPPORTIVE HOUSING PROGRAM (TSI),
CHANEL TAZZA, *Division Director TSI
Supportive Housing*, BARBARA COHEN, *Program
Director TSI Supportive Housing,* SIMON
ROBSON, *Supervisor/Director TSI Supportive
Housing*, and SEERAJ LATCHMAN,

                        Defendants.
-------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      On March 7, 2016, Plaintiff Steven Spavone, proceeding *pro se*, filed this action against Defendants Transitional Services of New York Supportive Housing Program ("TSI"), Chanel Tazza, Division Director TSI Supportive Housing, Barbara Cohen, Program Director TSI Supportive Housing, Simon Robson, Supervisor/Director TSI Supportive Housing, and Seeraj Latchman. Plaintiff alleges violations of his rights under the Eighth and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983,[1] and disability, race and national origin discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3604 *et seq.* (the "FHA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*

---

[1] The Court construes Plaintiff's claims for violations of the Eighth and Fourteenth Amendments of the United States Constitution as being asserted pursuant to 42 U.S.C. § 1983.

(the "ADA").[2] (Compl., Docket Entry No. 1.[3]) Plaintiff seeks compensatory and punitive monetary damages and injunctive relief. (*Id.* at 7–9.) The Court grants Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). For the reasons set forth below, the Court dismisses the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff is granted leave to file an amended complaint within thirty (30) days of the date of this Memorandum and Order.

**I. Background**

The following facts are taken from the Complaint and are accepted as true. Plaintiff resides at 101-66 125th Street, Queens, NY, a property owned by Defendant Latchman, "under supervision of" TSI, a non-profit mental health agency. (Compl. 3.) Plaintiff's Supplemental Security Income and Social Security Disability Insurance benefits are used to "supply living quarters/accommodations" to him as part of TSI's supportive housing program and mental health program. (*Id.*) Plaintiff asserts that TSI and Latchman receive additional federal and local funding "to supply apartments and reasonable accommodations to individuals with a disability." (*Id.*) Plaintiff alleges that he is disabled and, although he does not specify his disability, references his post-traumatic stress disorder symptoms and use of mental health programming. (*Id.* at 3, 5.)

Plaintiff alleges that Latchman has failed to provide adequate heat at Plaintiff's residence and has failed to provide "proper fire exit information and access" and a "qualified super/repairman." (*Id.* at 3.) Plaintiff further alleges that Latchman has been cited for violations

---

[2] Plaintiff also asserts that Defendants' conduct violates other unspecified "State and Local regulations/law." (Compl. 3.)

[3] Because the Complaint is not consecutively paginated, the Court's citations refer to the page number assigned by the Electronic Document Filing System.

for needed repairs and dangerous conditions in Plaintiff's apartment and in common spaces in the building, but Latchman "refuses to initiate repairs." (*Id*. at 5.) Plaintiff states that he has made complaints about the conditions to Latchman and TSI, as well as to New York City agencies including the "Mayor's office for persons with disabilities and 311 New York City emergency services associated with [Housing Preservation and Development]," but Latchman has failed to correct the "dangerous prevailing conditions." (*Id*.)

According to Plaintiff, Latchman has also "harassed" Plaintiff and "used racist slurs and discriminatory remarks" as to Plaintiff's national origin, referring to Plaintiff as "white American trash" and "white garbage." (*Id*. at 5.) Plaintiff alleges that Latchman's harassment has caused him "excess stress," which "exacerbated [his] mental health conditions while affecting [his] general health." (*Id*.)

## II. Discussion

### a. Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (same); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even

after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

### b. Plaintiff fails to state a federal claim pursuant to 42 U.S.C. § 1983

Liberally construing the Complaint, Plaintiff attempts to allege claims for violations of the Eighth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983. (Compl. 5, 7.)

#### i. Eighth Amendment claim

Plaintiff asserts that Defendants have violated the Eighth Amendment because their "deliberate indifference" is shown "through conditions created and allowed by [] Defendants." (*Id*. at 7.)

"Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977); *see also Shenk v. Cattaraugus Cty.*, 305 F. App'x 751, 752 (2d Cir. 2009) (first citing *Ingraham*, 430 U.S. at 667–68; and then citing *United States v. Dien*, 598 F.2d 743, 745 (2d. Cir. 1975)); *Camacho v. City of N.Y. Office of Child Support*, No. 05-CV-2002, 2006 WL 2642195, at *1 (S.D.N.Y. Sept. 14, 2006) ("The Eighth Amendment operates to protect individuals who have been convicted from cruel and unusual punishment in connection with their convictions." (citing *Graham v. Connor*, 490 U.S. 386, 393 (1989))). Because the Eighth Amendment's prohibition against cruel and unusual punishment applies only to convicted prisoners and Plaintiff has not alleged that he has been convicted or imprisoned, he fails to state a claim for violations of the Eighth Amendment. Plaintiff's claim pursuant to the

Eighth Amendment is therefore dismissed.

### ii. Fourteenth Amendment claim

Plaintiff alleges that his Fourteenth Amendment rights have been "knowingly and willingly violated" and that he has "been denied fair and equal protection" by being "discriminated [against] based on race, National origin, and disability." (Compl. 7.) Plaintiff asserts that Latchman's harassing statements and the conditions of his housing are discriminatory, violate the Fourteenth Amendment, and "fail[] to provide [him with] equal protection of the [l]aws." (*See id.* at 3, 5.) Plaintiff further asserts that the TSI Defendants are responsible for Latchman's treatment of Plaintiff because TSI is responsible for providing Plaintiff with safe housing. (*See id.* at 5.) The Court construes Plaintiff as asserting a claim pursuant to the Fourteenth Amendment's Equal Protection Clause against all Defendants.

To state an claim under section 1983 for violations of the Equal Protection Clause based on selective enforcement, Plaintiff must show that (1) "compared with others similarly situated, [the plaintiff] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [the plaintiff]." *Martine's Serv. Ctr., Inc. v. Town of Wallkill*, 554 F. App'x 32, 35 (2d Cir. 2014) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)); *see Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011) (noting that in order to satisfactorily state a selective enforcement claim, the court must determine, based on the allegations in the operative complaint, whether it is plausible that a reasonable jury could ultimately conclude that the plaintiff is similarly situated to an alleged comparator).

1. **State action**

A claim for relief pursuant to 42 U.S.C. § 1983 must allege facts showing that the challenged conduct was "committed by a person acting under color of state law." 42 U.S.C. § 1983. Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'" *Hooda v. Brookhaven Nat. Lab.*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (internal quotation marks and citation omitted); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173 (1972). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted) (quoting *United States v. Int'l. Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)). The Fourteenth Amendment does not protect against private conduct, "no matter how unfair that conduct may be." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 192 (1988) ("As a general matter the protections of the Fourteenth Amendment do not extend to 'private conduct abridging individual rights.'") (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961))).

The conduct of a nominally private entity may be attributed to the state, satisfying the state action requirement, if:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a

public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (alterations in original) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)); *see Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) ("The question is whether the private actor's conduct has sufficiently received the imprimatur of the State so as to render it an action of the State for purposes of § 1983." (citation and internal quotation marks omitted)). Each of the three avenues requires a fact-specific inquiry into the challenged conduct and, in order to find state action, a court must determine that the specific actions of which a plaintiff complains can be fairly deemed those of the state. *See Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 265 (2d Cir. 2014) (examining public function test, noting that the function performed by the private entity must have historically been "an exclusive prerogative" of the state (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 159 (1978))); *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491–92 (2d Cir. 2009) (examining joint action test and noting that state action cannot be premised solely on subjection to state regulation, funding, licensing or even state creation); *Lynch v. Southampton Animal Shelter Found. Inc.*, 971 F. Supp. 2d 340, 349–50 (E.D.N.Y. 2013) (examining compulsion test).

Under the close nexus or joint action test, the requisite nexus between the State and the challenged conduct exists "where a private actor has operated as a willful participant in joint activity with the State or its agents, or acts together with state officials or with significant state aid." *Abdullahi*, 562 F.3d at 188 (citations and internal quotation marks omitted); *Barrett v. Harwood*, 189 F.3d 297, 304 (2d Cir. 1999) ("A private person — not a government official — acts under color of state law for purposes of § 1983 when 'he has acted together with or has obtained significant aid from state officials' . . . ." (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982))). "[A] private entity does not become a state actor for purposes of

7

§ 1983 merely on the basis of 'the private entity's creation, funding, licensing, or regulation by the government.'" *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003)). It is also not sufficient "to plead state involvement in some activity of the institution alleged to have inflicted injury upon a plaintiff; rather, the plaintiff must allege that the state was involved with the activity that caused the injury giving rise to the action." *Sybalski*, 546 F.3d at 258 (citations and internal quotation marks omitted).

Plaintiff has not alleged facts from which the Court can infer that any of the Defendants are state actors under any of these tests. Plaintiff alleges that his housing is supported by public funding provided to TSI and, indirectly, to Latchman. (Compl. 3.) These allegations are insufficient to show that Defendants acted with a sufficient "close nexus" to the state to support a section 1983 claim. *See Moose Lodge No. 107*, 407 U.S. at 173 ("The Court has never held, of course, that discrimination by an otherwise private entity would be violative of the Equal Protection Clause if the private entity receives any sort of benefit or service at all from the State, or if it is subject to state regulation in any degree whatever."). Plaintiff's allegations are also insufficient because Plaintiff fails to allege any state involvement in the precise conduct on which Plaintiff's claims are based, namely, Latchman's harassment of Plaintiff and the substandard quality of Plaintiff's housing. *See Hollander v. Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010) (holding that allegedly discriminatory nightclub admissions policy was too attenuated from state regulation of alcohol sales and issuance of liquor licenses to satisfy state action requirement); *Young*, 152 F. Supp. 2d at 364 ("[T]he crucial relationship for a finding of state action is between the governmental entity and the *action* taken by the private entity, not between the governmental entity and the private *actor*."). Plaintiff's section 1983 claims are

therefore dismissed as against all Defendants.

### c. Plaintiff fails to state a claim for discrimination pursuant to the FHA

Plaintiff seeks to assert disability, race and national origin discrimination claims pursuant to the FHA. (Compl. 3, 5.) The FHA makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because race, color, religion, sex, familial status, national origin or handicap." 42 U.S.C. § 3604(a); *see also Tex. Dept. of Hous. and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. ---, ---, 135 S. Ct. 2507, 2516 (2015) (explaining that the FHA initially made it unlawful "to discriminate in the sale or rental of any housing . . . on the basis of race, creed, color, or national origin"); *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015) (citing Section 3604(a) of the FHA). It also prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling." 42 U.S.C. § 3604(b). "[T]he FHA forbids those practices that make housing unavailable to persons on a discriminatory basis as well as discriminatory terms and conditions with respect to housing that is provided." *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 88 (2d Cir. 2000), *abrogated on other grounds by Swierkiewicz v. Sorema NA*, 534 U.S. 506 (2002). To establish discrimination under the FHA, plaintiffs "have three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 45 (2d Cir. 2002)). The Court addresses Plaintiff's disability claim separately from his race and national origin claims.

### i. Disability discrimination

Plaintiff appears to assert that Defendants have intentionally discriminated against him based on a disability and have failed to reasonably accommodate his disability. Plaintiff asserts that, because Defendants are "under contract with a public agency to provide safe housing and reasonable accommodations to [] Plaintiff" and because that housing is publically funded, Defendants are "liable to all provisions provided," under the FHA. (Compl. 3.) Plaintiff further alleges that Defendants have failed to "provide safe housing and reasonable accommodations to a qualified person with a disability." (*Id.*)

The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). The FHA defines "handicap" to include a "mental impairment which substantially limits one or more of [a] person's major life activities." *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 152 (2d Cir. 2014) (quoting 42 U.S.C. § 3602(h)(1)). Pursuant to HUD regulations, "[m]ajor life activities" impacted by a handicap are defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Id*. (quoting 24 C.F.R. § 100.201(a)(2)). The FHA requires "that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities." *Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 49 (2d Cir. 2012) (internal quotation marks omitted) (citing *City of Middletown*, 294 F.3d at 45).

To prove intentional disability discrimination under the FHA, "a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a

public entity; and (3) that such exclusion or discrimination was due to his disability." *Forziano v. Indep. Grp. Home Living Program, Inc.*, 613 F. App'x 15, 17 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34–35 (2d Cir. 2003)).

To allege an FHA claim of disability discrimination based on a defendant's failure to provide reasonable accommodation,

> a plaintiff must show (1) that the plaintiff or a person who would live with the plaintiff had a handicap within the meaning of [the FHA]; (2) that the defendant knew or reasonably should have been expected to know of the handicap; (3) that the accommodation was likely necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation requested was reasonable; and (5) that the defendant refused to make the requested accommodation.

*Olsen*, 759 F.3d at 156; s*ee also Tsombanidis*, 352 F.3d at 578 (stating that a plaintiff must "first provide the governmental entity an opportunity" to provide an accommodation, such that the governmental entity "knows what a plaintiff seeks prior incurring liability for failing to affirmatively grant a reasonable accommodation"); *Bentley v. Peace and Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 345 (E.D.N.Y. 2005) (discussing elements of a reasonable accommodation claim). Plaintiffs have the burden of showing that "but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Tsombanidis*, 352 F.3d at 578.

Plaintiff does not allege any facts to show that any Defendants intentionally discriminated against Plaintiff based on his disability or failed to reasonably accommodate his disability. First, Plaintiff does not specify the nature of his disability. Second, Plaintiff fails to allege a connection between his disability and the poor housing conditions and harassment by his landlord, Latchman. Such a connection is necessary in order to state a claim of intentional discrimination, as Plaintiff must allege that the discrimination is "due to his disability." *See*

11

*Forziano*, 613 F. App'x at 17. Third, Plaintiff fails to allege that he sought a reasonable accommodation for his disability and that it was denied to him, which is necessary in order to state a failure-to-accommodate claim. *See Olsen*, 759 F.3d at 156. Plaintiff's allegations are insufficient to state a claim for intentional disability discrimination or failure to accommodate pursuant to the FHA against any Defendants, and his FHA claim for disability discrimination is therefore dismissed.

### ii. Race and national origin discrimination

Plaintiff seeks to assert a claim for violations of the FHA based on race and national origin discrimination. (Compl. 7.) Plaintiff alleges that Latchman used "racist slurs" and made discriminatory remarks based on Plaintiff's race and national origin. (*Id.*)

The FHA provides that it is unlawful "[t]o refuse to sell or rent, . . . or otherwise make unavailable or deny, a dwelling to any person because of race . . . or national origin." 42 U.S.C. § 3604(a). It also prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling." *Id.* § 3604(b).

Courts in this Circuit have construed section 3604(b) of the FHA to prohibit the creation of a "hostile environment" by individuals who have control or authority over the "terms, conditions, or privileges of sale or rental of a dwelling," similar to the prohibition imposed by Title VII against the creation of a hostile work environment.[4] *Cain v. Rambert*,

---

[4] Although nearly all of the courts in this Circuit that have recognized a cause of action for the creation of a hostile housing environment have done so with regard to allegations of sexual harassment, at least one court has recognized such a cause of action based on membership in another protected class, family status. *See Khalil v. Farash Corp.*, 260 F. Supp. 2d 582, 583–589 (W.D.N.Y. 2003) (denying the defendant's motion for summary judgment on the plaintiff's claim that, *inter alia*, the defendant, a management company that managed the plaintiff's housing

No. 13-CV-5807, 2014 WL 2440596, at *4 (E.D.N.Y. May 30, 2014); *see Francis v. Kings Park Manor, Inc.*, 91 F. Supp. 3d 420, 428–29 (E.D.N.Y. 2015) ("[T]he district[] courts in this Circuit have recognized a hostile housing environment claim against a landlord under the FHA only where the landlord 'created' the conditions of harassment, rather than was merely notified about it and failed to take corrective action."); *Glover v. Jones*, 522 F. Supp. 2d 496, 503 (W.D.N.Y. 2007) ("Sexual harassment claims are cognizable under the FHA . . . . With regard to hostile environment discrimination, 'the legal standard for sexual harassment claims under the FHA has been analogized in the Second Circuit to the standard pertaining to hostile work environment claims under Title VII.'" (alteration omitted) (quoting *Rich v. Lubin*, No. 02-CV-6786, 2004 WL 1124662, at *4 (S.D.N.Y. May 20, 2004)); *Anonymous v. Goddard Riverside Cmty. Ctr., Inc.*, No. 96-CV-9198, 1997 WL 475165, at *4 (S.D.N.Y. July 18, 1997) ("The Second Circuit has repeatedly recognized that Title VII (employment discrimination) cases are relevant to Title VIII (housing discrimination) cases by virtue of the fact that the 'two statutes are part of a coordinated scheme of federal civil rights laws enacted to end discrimination.'" (quoting *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934 (2d Cir. 1988))).

A plaintiff seeking to state a hostile housing environment claim must allege that (1) "she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile [housing] environment," *Rich*, 2004 WL 1124662, at *4, (2) the harassment was because of the plaintiff's membership in a protected class, *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (Title VII), and (3) "a basis exists for imputing the allegedly

---

complex, created a "hostile living environment for families with children" by promulgating and enforcing rules that disfavored families with children); *see also Khalil v. Farash Corp.*, 277 F. App'x 81, 84 (2d Cir. 2008) (assuming, without deciding, that a plaintiff may state an FHA claim of discrimination against families with children based on a hostile housing environment theory).

13

harassing conduct to the defendants," *Rich*, 2004 WL 1124662, at *4. As with any claim asserted pursuant to the FHA, a plaintiff must also show a relationship between the discriminatory conduct and housing. *See People of State of N.Y. by Abrams v. Merlino*, 694 F. Supp. 1101, 1104 (S.D.N.Y. 1988) ("[P]laintiffs, to succeed, must demonstrate . . . a relationship between the harassment and housing.").

The Complaint does not state a claim for hostile housing environment against any of the Defendants based on race or national origin harassment. Plaintiff asserts that Latchman has "harassed" him and "used racist slurs and discriminatory remarks," such as "white American trash" and "white garbage," concerning Plaintiff's national origin. (Compl. 5.) However, Plaintiff provides no allegations that connect Latchman's alleged racial harassment to Plaintiff's housing conditions. Therefore, the Court dismisses Plaintiff's FHA claim for race or national origin discrimination.

### d. Plaintiff fails to state a claim for discrimination under the ADA

Plaintiff appears to allege claims for disability discrimination pursuant to the ADA. Plaintiff alleges that he is disabled and, although he does not specify his disability, references his post-traumatic stress disorder symptoms and use of mental health programming. (Compl. at 3, 5.) According to Plaintiff, Latchman's harassment has caused Plaintiff stress and "exacerbated [his] mental health conditions while affecting [his] general health." (*Id*. at 5.)

#### i. Plaintiff's residence is not a public accommodation

The ADA prohibits discrimination against any individual on the basis of disability "by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182. "The phrase public accommodation is defined in terms of 12 extensive categories, which the legislative history indicates should be construed liberally to afford people

with disabilities equal access to the wide variety of establishments available to the nondisabled."
*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676–77 (2001) (citations and internal quotation marks omitted). Public accommodations include "an inn, hotel, motel, or other place of lodging," 42 U.S.C. § 12181(7), but "do not include purely residential facilities." *Roberts v. Royal Atl. Corp.*, No. 03-CV-2494, 2012 WL 4849138, at *5 (E.D.N.Y. Oct. 5, 2012); *see Rappo v. 94-11 59th Ave. Corp.*, No. 11-CV-4371, 2011 WL 5873025, at *2 (E.D.N.Y. Nov. 21, 2011) (The ADA "does not apply to private residential complexes, even if the premises are used for publicly subsidized housing."); *Reid v. Zackenbaum*, No. 05-CV-1569, 2005 WL 1993394, at *4 (E.D.N.Y. Aug.17, 2005) ("A residential facility, such as an apartment, is not a public accommodation under the ADA."); *Johnson v. Laura Dawn Apartments, LLC*, 2012 WL 33040 at *1 n.1 (E.D. Cal.2012) ("The leasing office of an apartment complex is a place of public accommodation, despite the fact that the apartments themselves are not subject to the ADA"); *No Barriers, Inc. v. BRH Texas GP, L.L.C.*, No. 01-CV-0344, 2001 WL 896924, at *3 (N.D. Tex. Aug. 2, 2001) ("[D]istrict courts . . . consistently deny[] that solely residential facilities are public accommodations . . . ." (collecting cases)). Because Plaintiff's place of residence, even if publically subsidized, is not a public accommodation subject to the ADA, Plaintiff's allegation of discrimination fails to state an ADA claim as to Latchman.

    **ii. Defendants are not public entities**

  The ADA also "provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152–53 (2d Cir. 2013) (quoting *United States v. Georgia*, 546 U.S. 151, 153 (2006)); *Gentile v. Town of*

*Huntington*, 288 F. Supp. 2d 316, 322 (E.D.N.Y. 2003) (The ADA "provides disabled individuals redress for discrimination by a 'public entity.'" (citation omitted)). "In order to establish a violation under the ADA, [] plaintiffs must demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). The ADA defines "public entity to include any State or local government and any department, agency, . . . or other instrumentality of a State." *Georgia*, 546 U.S. at 154 (internal quotation marks omitted) (quoting 42 U.S.C. § 12131); *see Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 337 (E.D.N.Y. 2012) ("A housing authority is a 'public entity' covered by Title II of the ADA."). A suit brought against an individual acting in his or her official capacity will be considered a suit against a "public entity." *Henrietta D.*, 331 F.3d at 272. Although Plaintiff alleges that TSI receives public funding, he does not allege that TSI is a government agency or a housing authority and, therefore, fails to state a public services ADA claim. Accordingly, the Court dismisses Plaintiff's ADA claims as to all Defendants.

    e. **State law claims**

Plaintiff appears to also assert state law landlord and tenant claims to remedy the conditions in his residence. Plaintiff repeatedly references that the conditions in his residence, including a lack of heat and a proper fire exit, are in violation of unspecified state and local laws. (*See* Compl. 3.) Because Plaintiff has not stated a claim under any federal law, the Court declines to determine whether it has jurisdiction over his state law claims because the Court grants Plaintiff leave to amend his federal claims. The Court notes that, if Plaintiff fails to file an

16

amended complaint, the Court has no jurisdiction over landlord-tenant matters, which sound in state law. *See Galland v. Margules*, No. 05-CV-5639, 2005 WL 1981568, at *1 (S.D.N.Y. Aug. 17, 2005) (noting that federal courts do not have federal question subject matter jurisdiction over state residential landlord-tenant matters), *aff'd*, 191 F. App'x 23 (2d Cir. 2006); *see also Rosen v. N. Shore Towers Apartments, Inc.*, No. 11-CV-0752, 2011 WL 2550733, at *4 (E.D.N.Y. Jun. 27, 2011) (noting that courts in this Circuit "routinely dismiss for lack of subject matter jurisdiction" claims concerning eviction (collecting cases)).

    **f.   Leave to amend**

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to replead the Complaint to correct the deficiencies noted above. If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the Complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Any amended complaint must be filed within thirty (30) days of the date of this Memorandum and Order. The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this Memorandum and Order. No summons shall issue at this time, and all further proceedings shall be stayed until Plaintiff has complied with this order. If Plaintiff fails to file an amended complaint within thirty (30) days, the instant action shall be dismissed without prejudice.

### III. Conclusion

For the foregoing reasons, the Complaint is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff is granted thirty (30) days' leave to file an amended complaint in accordance with this Memorandum and Order. If Plaintiff fails to file an amended complaint within thirty (30) days, the Court shall dismiss this Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

\_\_\_\_\_s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: May 12, 2016
      Brooklyn, New York